**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-6199**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

PAULETTE MARTIN, a/k/a Paulette Murphy, a/k/a Paulette Akuffo, a/k/a Paula Murphy, a/k/a Auntie,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge.  (8:04-cr-00235-RWT-1)

**No. 17-6200**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LUIS FELIPE MANGUAL, SR.,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge.  (8:04-cr-00235-RWT-25)

Argued:  December 11, 2018                    Decided:  February 26, 2019

Before GREGORY, Chief Judge, MOTZ, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion.  Chief Judge Gregory wrote the opinion, in which Judge Motz and Judge Floyd joined.

**ARGUED:**  Sapna Mirchandani, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Ellen Elisabeth Cobb, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.  **ON BRIEF:**  James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Robert K. Hur, United States Attorney, Stephen M. Schenning, Acting United States Attorney, Baltimore, Maryland, David I. Salem, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

GREGORY, Chief Judge:

Defendants-Appellants Paulette Martin and Luis Felipe Mangual Sr. both filed motions for sentence reductions under 18 U.S.C. § 3582(c)(2) and now appeal adverse district court rulings. Because the district court failed to provide Martin and Mangual with individualized explanations for its rulings on their respective motions, we vacate and remand.

## I.

## A.

A jury convicted Martin in 2006 of various drug and drug-related offenses in violation of 21 U.S.C. § 846, 21 U.S.C. § 843(b), and 21 U.S.C. § 841(a). Martin served as a leader in a drug conspiracy for at least seven years—a conspiracy involving a large quantity of cocaine and heroin—and even though she did not engage in violence, her co-conspirators carried firearms. Given this information, the Presentence Report calculated Martin's adjusted combined offense level as a 44. Martin had only one prior conviction, dating back to 1986 and therefore had a criminal history category of I. The Sentencing Guidelines' calculations recommended Martin face life imprisonment for her crimes. The district court noted the severity of Martin's criminal activity and sentenced her to life imprisonment, and this Court affirmed Martin's conviction and sentence. *United States v. Martin*, 452 F. App'x 239 (4th Cir. 2011).

In February 2015, Martin filed a *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c)(2), seeking the benefit of Amendment 782,[*] which lowered the base offense levels applicable to drug offenses by two offense levels. This could afford Martin sentencing relief if her Guidelines range were recalculated at an adjusted combined offense level of 42 instead of her original 44. Martin asserted her eligibility for reduction based on Amendment 782, but also emphasized her work tutoring other inmates, the number and variety of courses she completed while incarcerated, and her exemplary prison record. Martin explained how she lacked any connection to organized drug-based criminal enterprises and that she would not be a threat to society at her age. Martin further contended that she could possibly serve as a mentor to misguided youth upon her release from prison. In addition to Martin's *pro se* motion, the Office of the Federal Public Defender filed a motion on her behalf, argued that her revised Guidelines range after factoring in Amendment 782 would be 360 months to life imprisonment, and requested the court to provide a sentence on the low end of that range. The probation officer agreed and recommended a reduction in the sentence from life to 360 months.

The Government opposed Martin's motion and countered both that Martin was ineligible for relief and that the § 3553(a) factors did not weigh in favor of granting the

---

[*] On November 1, 2014, the Sentencing Commission issued Amendment 782 to its Sentencing Guidelines, which lowered the recommended sentences for certain drug crimes, including the crime of which Martin was convicted. *See* United States Sentencing Commission, Guidelines Manual, supp. App'x. C, amend. 782 (2014). At the same time, the Commission promulgated another amendment, Amendment 788, which amended § 1B1.10 of the Guidelines to authorize district courts to apply Amendment 782 retroactively to reduce the length of certain already imposed sentences.

motion, emphasizing the court's comments at sentencing about the seriousness of the crimes and the need to protect the public from Martin, a leader of an extensive drug-trafficking operation.

Martin's counsel argued at the hearing that she is eligible for the reduction and that the Sentencing Guidelines previously offered only one maximum advisory sentence to the court, life imprisonment, and that there was nothing to indicate from the sentencing hearing that a 360-month sentence would not also serve the goals of sentencing. Counsel informed the court that Martin's good behavior had earned her a place in a low security facility and that she had earned her GED and become a respected tutor for other inmates. Despite this productive record, counsel explained, Martin is precluded from earning good time credits and participating in other programs because of her life sentence. Counsel rejected the suggestion that Martin would be a threat to society if released after 360 months, considering her history of nonviolence and her age of 84 at the time of her release. Finally, counsel argued that it would be costly and promote no legitimate governmental aim to incarcerate Martin in her advanced years.

In March 2016, the district court denied Martin's motion for a sentence reduction by checking the "**DENIED**" box on the form order. We vacated the judgment and remanded because we could not determine "whether the court concluded that Martin was ineligible for a sentence reduction or, alternatively, whether the court decided that such a reduction was unwarranted in light of the § 3553(a) factors and Martin's post-sentencing conduct." *United States v. Martin*, 669 F. App'x 132, 133 (4th Cir. 2016). This Court found that "[b]ecause the parties presented fully developed, nonfrivolous arguments as to

both steps of the sentence reduction inquiry, we could only speculate as to the basis for the district court's decision." *Id.*

Upon remand, the district court stated in an order that it had once again reviewed Martin's motion for a sentence reduction, counsel's correspondence to the court, and the Government's response in opposition. As an initial matter, the district court found Martin eligible for relief because the bottom of her Guidelines range had been reduced from life to 360 months under Amendment 782. However, the court determined that a sentence reduction was not warranted based on its discretion "[a]fter carefully weighing the § 3553(a) factors." The court explained that Martin "ran a large, multi-million-dollar, multi-jurisdiction drug operation, spanning Maryland, Virginia, and the District of Columbia, and operated it for years. The seriousness of her actions and offenses cannot easily be overstated." For those reasons and the ones "set forth in the Government's Response," the court denied Martin's motion for a sentence reduction. Martin timely filed her notice of appeal. This Court has jurisdiction over Martin's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

**B.**

In 2006, Mangual entered into a guilty plea agreement for a nonviolent drug offense in violation of 21 U.S.C. § 846. Mangual admitted that for about two years he engaged in a drug-trafficking conspiracy involving over 150 kilograms of cocaine and 20 kilograms of heroin. The Presentence Report calculated Mangual's adjusted combined offense level as a 36. Mangual had a 1994 drug offense and a criminal history category of II. His Sentencing Guidelines range was 210 to 262 months' imprisonment.

6

The district court sentenced Mangual to 262 months' imprisonment, the top of the guidelines range. Mangual's sentencing transcript is not in the record, and the only indication this Court has of the district court's reasoning is a brief note included in the Statement of Reasons in the court's Judgement. There, the district court stated that a "sentence at the top of the guideline range is appropriate because of the large quantity of drugs and the defendant's prior conviction of the same type of offense."

In April 2015, Mangual filed a *pro se* motion for a sentence reduction under § 3582(c)(2), seeking the benefit of Amendment 782. Mangual contended that after the application of Amendment 782, his Sentencing Guidelines range is 168 to 210 months' imprisonment. In a 2015 letter to the court, Mangual, a 75-year-old inmate at that time, asserted that, during his 10 years in prison, his sole disciplinary infraction was for missing count when he did not hear the count call. He further notified the court that the jail placed him on medical furloughs four times, that he has had open heart surgery, and that he is in "chronic care" and taking multiple medications. Mangual explained that the mother of his children is also sick, and he expressed his desire to spend his last years with her and their children, 15 grandchildren, and 8 great grandchildren. Mangual said he exhausted the educational opportunities he had access to while incarcerated. Moreover, Mangual asserted that he has tried to better himself while in jail: he and another inmate "put together a concept called 'The People/The Solution,'" which is "an educational and awareness tool to motivate the people to help others" and thereby help themselves.

On December 14, 2016, the Federal Defender filed a motion on Mangual's behalf, urging the court to reduce his sentence to 168 months' imprisonment, the bottom of his

amended Guidelines range. Counsel emphasized that Mangual "was not a leader or manager of the conspiracy (of the 31 people charged, he was the 25th named defendant); his conduct was not violent (he served as a middleman in drug sales); and he neither used nor possessed a weapon at any time." Counsel also observed that Mangual's post-sentencing conduct was "outstanding": he "has built a solid employment record" in prison; "has completed his court-ordered financial obligations"; and "has a nearly flawless disciplinary record." Indeed, due to his exemplary conduct, he has been designated to a minimum-security facility and is eligible to work outside the prison compound. Finally, counsel argued that Mangual was unlikely to recidivate due to his "advanced age, his deteriorating health, and the stable home to which he will be released."

The probation officer agreed that Mangual was eligible for a sentence reduction but recommended a sentence at the top of the amended range—210 months' imprisonment. Similarly, in a response dated December 16, 2016, the Government did not oppose a sentence reduction but objected to the extent of the relief sought by Mangual and urged the court to impose a 210-month sentence. The Government explained that it "aims to recommend an amended sentence that is consistent with the original sentence" and, therefore, Mangual "is eligible for a comparable sentence at the top of the amended guidelines range." In a footnote, the Government acknowledged Mangual's "apparently positive post-sentencing conduct, advanced age, and minimal criminal history" but "recommend[ed] a comparable sentence in the interest of fairness and consistency."

8

On December 21, 2016, the district court granted Mangual's motion for a sentence reduction but did not reduce the sentence to the extent requested, instead imposing the sentence recommended by the Government—210 months' imprisonment. The court used the standard form, which included a statement confirming that the court had taken into account the policy statement in USSG § 1B1.10 and the sentencing factors in § 3553(a). The parties filed motions arguing over the propriety of the district court's partial grant based on the Government's desire to have a sentence comparable to Mangual's original term of imprisonment. The district court agreed with the Government's position. Accordingly, the court declined to modify its prior order. The court entered an order granting in part Mangual's motion for a reduced sentence on February 3, 2017 and reduced his sentence to 210 months. Mangual timely filed a notice of appeal on February 17, 2017. This Court has jurisdiction over Mangual's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

In general, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, section 3582(c)(2) provides that a district court may reduce a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The Supreme Court promulgated a two-step process for determining where, and to what extent, a reduction is permissible under section 3582(c)(2).

9

First, the court is required "to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon v. United States*, 560 U.S. 817, 827 (2010). In particular, section "1B1.10(b)(1) requires the court to begin by determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. 817, 827 (internal quotation marks omitted). Second, the court is required to "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.*

This Court "review[s] a district court's grant or denial of a § 3582(c)(2) motion for abuse of discretion." *United States v. Smalls*, 720 F.3d 193, 195 (4th Cir. 2013). Nonetheless, whether a court ruling on a motion to reduce under § 3582(c)(2) must provide an individualized explanation is considered *de novo* by this Court. *Smalls*, 720 F.3d 193, 195.

### III.

### A.

The Supreme Court's recent holding in *United States v. Chavez-Meza* provides guidance regarding the level of detail a sentencing court must provide when evaluating section 3582(c)(2) motions to reduce sentences like the ones filed by Martin and Mangual. 138 S. Ct. 1959 (2018). It held that "[a]t bottom, the sentencing judge need

10

only set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 1964 (internal quotation marks and citations omitted). The Supreme Court sets forth a fact specific legal standard.

> Just how much of an explanation this requires, however, depends, as we have said, upon the circumstances of the particular case. In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others. But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing).

*Id.* at 165. Similarly, in the Fourth Circuit, when evaluating the sufficiency of a sentencing court's explanation, there is a presumption that the district court sufficiently considered relevant factors in deciding a section 3582(c)(2) motion. *United States v. Legree*, 205 F.3d 724, 729-30 (4th Cir. 2000); *Smalls*, 720 F.3d at 196. Nonetheless, the presumption is not irrebuttable, and this Court in *Legree* suggested that a defendant failed to overcome the presumption because "he point[ed] to no mitigating evidence which was not before the sentencing court." *Legree*, 205 F.3d 724, 730. Evidence of mitigating factors not available at the original sentencing has indeed been used to rebut the *Legree* presumption. *United States v. Hardy*, 665 F. App'x 268, 272 (4th Cir. 2016); *United States v. McKenzie*, 318 F. App'x 202, 204 (4th Cir. 2009).

**B.**

The district court improperly denied Martin's motion to reduce her sentence by failing to give her an individualized explanation for why it chose to deny her motion. *Smalls*, 720 F.3d at 198. The Supreme Court has clarified that the extent of explanation

11

required depends on the facts of each case, and "given the simplicity of [*Chavez-Meza*], the judge's awareness of the arguments, his consideration of the relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range," the Court held that "the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." 138 S. Ct. at 1967-68.

In contrast, the complexity of Martin's case required the district court to provide a more robust and detailed explanation for why it denied her motion to reduce. Martin has presented a mountain of new mitigating evidence that the sentencing court never evaluated. For example, Martin not only successfully pursued her GED but also became a respected tutor for other inmates and helped incarcerated women follow her footsteps in achieving their educational goals. Martin exhibited such exemplary behavior while incarcerated that correctional staff moved her into a low security facility. Martin also submitted documentary evidence that corroborates her coursework and her good behavior. Moreover, given her old age and marked rehabilitation, Martin argues that she is no longer a threat to society.

The district court, during Martin's remand proceedings, failed to address any of this new mitigation evidence. In *Chavez-Meza*, the defendant's educational classes and 114-month sentence did not warrant a significant explanation of the district court's reasoning regarding the motion to reduce. In Martin's case, her years of being both a student and now a tutor/instructor to other inmates, coupled with a sentence of life imprisonment, entitle her to a more robust explanation for why her mitigation evidence

12

holds no weight. The failure to provide an individualized explanation, especially in light of the significant amount of mitigation evidence, runs afoul of *Chavez-Meza* and allows Martin to rebut the Fourth Circuit's *Legree* presumption.

The Supreme Court has made it clear that a "sentence modification is not a plenary resentencing proceeding. We therefore need not turn a blind eye to what the judge said at petitioner's initial sentencing." *Chavez-Meza*, 138 S. Ct. at 1967 (internal quotations omitted). However, Martin does not ask this Court to disregard the old evidence of the rationale from her original sentence. Rather Martin asks this Court to follow our precedent which requires a district court to consider evidence of post-sentencing mitigation that would be relevant to the § 3553(a) factors.

The explanation the district court provided upon remand was merely a recitation of Martin's original criminal behavior. That is not the standard that the Supreme Court and the Fourth Circuit articulate for sentence-reduction motions. The district court was content to memorialize Martin's past transgressions without giving any weight to the multitude of redemptive measures that Martin has taken since she was initially sentenced to life in prison. The Government at oral argument even conceded that Martin's post-sentencing behavior is among the best that it has seen. Martin's journey toward rehabilitation is especially noteworthy because she was given a life sentence and had no idea that Amendment 782 would eventually arrive to give her a glimmer of hope. Martin strove to better herself and those around her without the prospect of any incentive or reward. The district court must provide an individualized explanation for why Martin's steps toward rehabilitation are meaningless. On remand, the district court should explain

13

to Martin why her sentence of life imprisonment for a nonviolent drug offense must remain undisturbed despite overwhelming evidence of rehabilitation.

## C.

Mangual is also entitled to relief under the law of this Circuit and the Supreme Court. As an initial matter, Mangual, like Martin, has significant evidence of mitigation that was not addressed by the district court when it partially granted his motion. In his ten years of incarceration Mangual has been a model inmate. The only infraction on his disciplinary record stems from his failure to hear his name during count call. He has used his time while incarcerated to create an educational and awareness tool to help his fellow inmates help each other. Mangual's behavior has led to his placement in a minimum-security facility. Prison officials trust Mangual at such a high level that he is allowed to work outside of the prison compound. The evidence of his exemplary conduct must properly be factored into the decision regarding his liberty interests. In addition, Mangual argues that he is unlikely to recidivate due to his advanced age, deteriorating health, and stable home upon release. Given that there is no reference to Mangual's new mitigation evidence, it is clear that the district court did not comply with the standards set forth in *Chavez-Meza*, and Mangual has rebutted the *Legree* presumption.

Moreover, this Court lacks Mangual's original sentencing transcript, and this omission provides another basis for remand given that we cannot conduct meaningful appellate review without such a transcript. *See Chavez-Meza*, 138 S. Ct. at 1965. In a prior decision, this Court found that a defendant rebutted the *Legree* presumption in a similar situation where the record did not contain the original sentencing transcript.

14

*McKenzie*, 318 F. App'x at 203. Here, without the transcript, this Court is left to speculate as to the reasons that led to Mangual's original sentence. At the initial sentencing hearing, the court explained in the statement of reasons that a sentence at the top of the Guidelines range was appropriate because of the significant quantity of drugs involved in the offense and Mangual's prior drug conviction. This Court cannot look to language about drug quantities and ascertain how the original sentencing court's rationale would interact with the host of mitigation evidence that arose post-sentencing. The district court must provide Mangual an individualized explanation as to why his lengthy sentence for a nonviolent drug offense must remain only partially reduced given the significant amount of mitigation evidence that Mangual has proffered post sentencing.

*Chavez-Meza* grants appellate courts broad discretion in reviewing section 3582(c)(2) orders. "If the court of appeals considers an explanation inadequate in a particular case, it can send the case back to the district court for a more complete explanation." 138 S. Ct. at 1965. Here, given the complex record full of new mitigation evidence and the lack of the original sentencing transcript, this Court requires more explanation. We cannot conduct a proper appellate review and must remand in order to ensure that Mangual's acts toward rehabilitation are properly examined and addressed through an individualized explanation.

**IV.**

There is no right to a sentence reduction under § 3582(c)(2). However, a district court cannot ignore a host of mitigation evidence and summarily deny a motion to reduce

15

a sentence and leave both the defendant and the appellate court in the dark as to the reasons for its decision. This Court makes no assessments as to whether the motions to reduce appellants' sentences should have been granted or to what extent they should have been granted. However, the district court must provide a rationale as to why two individuals who have placed themselves on a positive life trajectory, despite the challenges of a lengthy period of incarceration, should receive no relief for their rehabilitation. The district court needs to explain to Martin and Mangual why their attempts at rehabilitation are futile. Accordingly, we vacate the district court's orders and remand the case for the district court to provide adequate reasoning for its decisions.

*VACATED AND REMANDED*