**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 20-7350**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

ANTHONY JERROD HIGH,

        Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:18-cr-00173-BO-1)

Argued: March 10, 2021                     Decided: May 7, 2021

Before NIEMEYER, MOTZ, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Motz and Judge Rushing joined.

**ARGUED:** Elliot Sol Abrams, CHESHIRE, PARKER, SCHNEIDER, PLLC, Raleigh, North Carolina, for Appellant. Joshua L. Rogers, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Banumathi Rangarajan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

Anthony High, who is currently serving an 84-month sentence of imprisonment, filed a motion in the district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) (authorizing district courts to "reduce the term of imprisonment" on finding "extraordinary and compelling reasons"). In his motion, High noted that he has a history of heart conditions that he maintained places him at an elevated risk of serious illness or death were he to contract COVID-19. And moreover, he argued, contracting COVID-19 was likely at a prison facility such as the Federal Correctional Institution at Ashland, Kentucky, where he was serving his sentence. He also relied on his rehabilitation in prison.

The government opposed High's motion, noting a number of measures that the Federal Bureau of Prisons was taking to protect FCI Ashland's prison population and the absence of any infection at the institution. It also argued that the sentencing factors set forth in 18 U.S.C. § 3553(a) "weigh[ed] heavily against reducing [High's] term of imprisonment."

The district court denied High's motion, relying on the § 3553(a) factors and the fact that High had "very recently [been] sentenced," at which time his § 3553(a) factors were also considered. It also noted that High had committed the crimes for which he had been sentenced "soon after [he] complete[d] [a prison sentence of] twenty years in state custody for a violent crime."

For the reasons given, we affirm.

I

A little more than a year after High was released from state prison, where he had served 20 years for a murder conviction, he began trafficking in illegal drugs. Between June 2017 and May 2018, he distributed at least 168 grams of crack cocaine, 6.61 grams of marijuana, and 10,325 grams of cocaine powder. Following his arrest in May 2018, he pleaded guilty to distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). On January 16, 2019, the district court sentenced High to 84 months' imprisonment, which represented a downward departure under U.S.S.G. § 5K1.1 of over 60 months based on High's substantial assistance to the government. The Federal Bureau of Prisons ("BOP") assigned High to FCI Ashland to serve his sentence.

Some 16 months after his sentencing, on May 11, 2020, High filed a motion in the district court for compassionate release under 18 U.S.C. § 3582(c)(1)(A). He stated:

> This motion should be granted due to the "extraordinary and compelling reasons" confronting the federal prison system by the pandemic of Covid-19 and the fact that Mr. High, at age 42, is not a danger to the community; and because respect for the law and general deterrence, other notable Section 3553(a) factors, would not be undermined by converting the remainder of his sentence to home confinement given the cataclysmic events of the current pandemic.

In support of his motion, High noted that he had been diagnosed with several cardiovascular conditions 20 years earlier. Specifically, he stated that he had "an enlarged heart, heart flutter (A-fib), bundle branch blockage, [and] high blood pressure." The medical records that he attached to his motion confirmed a history of atrial fibrillation and showed a recent EKG indicating a first-degree (the least severe) atrioventricular block and

3

a right bundle branch block. The medical records also included a February 2020 record reporting High's blood pressure as 140/78, which was within the hypertension range, and a May 2020 record reporting it as 120/59, which was not in that range.

In his motion, High argued that his medical condition placed him at an elevated risk of becoming seriously ill or dying from COVID-19 and that this, combined with the likelihood that "the Covid-19 virus [would] spread[] through the facility of FCI Ashland," presented the type of "extraordinary and compelling reason[]" necessary for a sentence reduction under § 3582(c)(1)(A)(i). He argued further that the sentencing factors of 18 U.S.C. § 3553(a) also weighed in favor of relief. In that regard, he noted that he had "no infractions or disciplinary issues while incarcerated on the instant charges" and argued that placing him "on home confinement with electronic monitoring . . . would afford adequate deterrence from any criminal conduct and protect the public."

The government opposed High's motion. It noted that there had not yet been any "confirmed coronavirus cases at FCI Ashland" and that the BOP was "actively working on the critical problem of containing the spread of the coronavirus within prisons." The government stated that, "among other steps, [the BOP had] limited access to prisons, restricted prisoner movements within prisons, used screening and testing, sought to educate inmates and staff on preventing the spread of disease, begun providing masks and hand cleaners, separated ill inmates, and — in appropriate cases — released inmates for home confinement." The government not only maintained that High failed to demonstrate the need for home confinement in this case, it also argued that "the [§] 3553(a) factors weigh[ed] heavily against reducing [High's] term of imprisonment." It emphasized his

4

serious criminal history and argued that the requested reduction, when he had "only served roughly 34.1% of his prison term," would unduly minimize the scope and severity of his offense.

The district court denied High's motion. It noted that "[c]ompassionate release may be available to defendants where . . . extraordinary and compelling circumstances warrant a reduction in sentence" but that such a reduction "must be consistent with applicable policy statements issued by the United States Sentencing Commission." The court also recognized that, "[i]n addition to considering whether extraordinary and compelling circumstances are present, a court must further consider the 18 U.S.C. § 3553(a) factors." And "here," the court concluded, "the § 3553(a) factors caution against relief." It explained:

> Defendant was very recently sentenced, and he committed the offense in this action soon after completing twenty years in state custody for a violent crime. In light of this, the Court's assessment of the relevant sentencing factors has not changed. The sentence imposed remains sufficient, but not greater than necessary, to advance the goals of sentencing set forth in § 3553(a). Having reviewed the record and considered the relevant factors, the Court concludes that relief under 18 U.S.C. § 3582(c)(1)(A) is not warranted.

From the district court's August 31, 2020 order denying High's motion, High filed this appeal.

II

The COVID-19 pandemic has understandably prompted an increasing number of inmates to file motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). That provision authorizes district courts to reduce terms of imprisonment upon finding

5

"extraordinary and compelling reasons."  An inmate's serious medical condition can be the basis for such a finding, *cf.* U.S.S.G. § 1B1.13 cmt. 1(A), and COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal.  The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.  In a different way, actually contracting COVID-19 can also provide a compelling case for relief if coupled with a prison's inability to address the condition and circumstances calling for compassion.

We do not here undertake to elucidate the shape of qualifying medical conditions. This is statutorily committed to the Sentencing Commission.  *See* 28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(C).  Nonetheless, depending on the circumstances, an inmate might well be able to present an extraordinary and compelling reason for release based on COVID-19.  Resolution of such motions is a matter committed to the discretion of the district courts, and we review such rulings for abuse of discretion.  *See United States v. Kibble*, No. 20-7009, ___ F.3d ___, 2021 WL 1216543, at *2 (4th Cir. Apr. 1, 2021) (per curiam); *see also, e.g., United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).  In doing so, we ensure that the district court has not acted arbitrarily or irrationally, has followed the statutory requirements, and has conducted the necessary analysis for exercising its discretion.  *See United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

We begin our discussion of High's motion by noting that the default position stated in 18 U.S.C. § 3582(c) is that a sentencing court "may not modify a term of imprisonment once it has been imposed." Nonetheless, Congress has provided a few exceptions to this general rule, including where, as invoked here, "extraordinary and compelling reasons warrant" a reduction of a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

For many years, district courts could reduce a term of imprisonment on that ground only "upon motion of the Director of the Bureau of Prisons." 18 U.S.C. § 3582(c)(1)(A) (2002). But, as part of the First Step Act of 2018, Congress amended the provision to allow federal inmates to file motions for compassionate release directly with a district court once they have exhausted their administrative remedies. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

The substantive portions of the statute, as applicable here, provide that, upon receiving such a motion for compassionate release, the court "*may* reduce the term of imprisonment . . . *after considering* the factors set forth in section 3553(a) to the extent that they are applicable, *if it finds* that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added). Thus, under the statute, a defendant becomes *eligible* for relief only if the court finds that a reduction is both (1) warranted by "extraordinary and compelling reasons" and (2) "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; *see also United States v. McCoy*, 981 F.3d 271, 280 (4th Cir. 2020).

7

As to the second requirement, however, we recently recognized that "there currently exists no 'applicable policy statement[]'" that governs a *defendant's* motion for compassionate release. *McCoy*, 981 F.3d at 281. We explained that "[t]he only policy statement that possibly could be 'applicable'" was U.S.S.G. § 1B1.13, but that that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *Id.* at 282 (emphasis added). It addresses only BOP-filed motions. Thus, as it currently stands, a court may find a defendant who filed a motion eligible for a sentence reduction after finding only that such a reduction is warranted by extraordinary and compelling reasons, which are not statutorily detailed.

Yet, those reasons may not be totally without definition. As we recognized in *McCoy,* U.S.S.G. § 1B1.13, even though issued before Congress authorized defendant-filed motions, "remains helpful guidance even when motions are filed by defendants." 981 F.3d at 282 n.7. Both before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same — that a court may reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). And U.S.S.G. § 1B1.13 describes "*what should be considered* extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (emphasis added) (internal quotation marks omitted). With respect to medical conditions, such reasons include that "[t]he defendant is suffering from a terminal illness" or "[t]he defendant is . . . suffering from a serious physical or medical condition." U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii). So while U.S.S.G. § 1B1.13 is not applicable to *defendant-filed* motions

8

under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term "extraordinary and compelling reasons" will be defined the same for *defendant-filed* motions.

In any event, if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must "consider[]" the § 3553(a) sentencing factors "to the extent that they are applicable" in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a).

In this case, the district court did not explicitly address or even question High's argument for extraordinary and compelling reasons — i.e., his contention that his risk of contracting a serious case of COVID-19 is elevated because of his cardiovascular conditions and his assertion that the virus would likely spread to and within FCI Ashland. Rather, the court responded to that claim as a given, explaining that its ruling on High's motion was based on its consideration of the § 3553(a) factors. The court thus concluded that even if High's particular level of vulnerability to the virus represented an "extraordinary and compelling reason," it still would not exercise its discretion to reduce his term of imprisonment from 84 months to time served — at that point, 27 months —

9

because "the § 3553(a) factors caution[ed] against [such] relief." It noted in particular that High had "committed the offense in this action soon after completing twenty years in state custody for a violent crime." And it explained that, "[i]n light of this," and because High "was very recently sentenced," its "assessment of the relevant sentencing factors ha[d] not changed" and that, in its judgment, "[t]he sentence imposed remain[ed] sufficient, but not greater than necessary, to advance the goals of sentencing set forth in § 3553(a)."*

We conclude that the district court did not abuse its discretion in declining to reduce High's term of imprisonment by approximately two-thirds, based on its consideration of the § 3553(a) factors. For the court's decision in this regard to amount to an abuse of discretion, we would have to conclude that the court "act[ed] arbitrarily or irrationally," that it "fail[ed] to consider judicially recognized factors constraining its exercise of discretion," that it "reli[ed] on erroneous factual or legal premises," or that it "committed an error of law." *Dillard*, 891 F.3d at 158 (cleaned up); *see also Kibble*, 2021 WL 1216543, at \*5. None of these grounds apply here, and the court's decision to deny High's request for a sentence reduction was, accordingly, one that fell within the scope of its discretion.

---

\* The district court also referred to U.S.S.G. § 1B1.13 as "provid[ing] criteria for determining whether extraordinary and compelling circumstances are present." But at that time, it did not have the benefit of our decision in *McCoy*, which held that "§ 1B1.13 does not apply to defendant-filed motions." 981 F.3d at 282. More importantly, because the district court's ruling rested on its consideration of the § 3553(a) factors, rather than §1B1.13, any error in referring to § 1B1.13 was immaterial. *See Kibble*, 2021 WL 1216543, at \*3–4 (affirming the district court's denial of a motion for compassionate release after recognizing such an error).

## III

High's argument on appeal does not take serious issue with the *substance* of the district court's decision but rather focuses on the *procedure* the court followed in explaining its decision. According to High, "The question for this Court is whether [a] district court is required to *address* each of a defendant's arguments when it considers a motion for compassionate release under 18 U.S.C. § 3582(c)(1)." (Emphasis added). On that question, we conclude that the Supreme Court's recent decision in *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018), controls and makes clear that no such categorical explanation requirement exists.

In *Chavez-Meza*, the defendant requested a sentence reduction under 18 U.S.C. § 3582(c)(2) because the sentencing range applicable to his sentence — which, when imposed, was at the bottom of the sentencing range — had subsequently been lowered by the Sentencing Commission. 138 S. Ct. at 1964. In his motion, Chavez-Meza "asked the judge to reduce his sentence to 108 months, the bottom of the new range, stressing [as justification] various educational courses he had taken in prison." *Id.* at 1967. The district court granted the motion, but it lowered Chavez-Meza's sentence only to a point near the middle of the new range — 114 months' imprisonment. *Id.* at 1965. And in so ruling, the district court simply checked boxes "on a form issued by the Administrative Office of the United States Courts," certifying that it had "considered" Chavez-Meza's motion and "taken into account the § 3553(a) factors." *Id.* at 1965 (cleaned up). The court provided no other explanation.

Chavez-Meza challenged the district court's explanation as inadequate because the court failed to explain why it had not imposed the lower sentence that he had requested. The Supreme Court held, however, that the "judge's explanation was adequate." *Chavez-Meza*, 138 S. Ct. at 1963. Notably, the government had argued that when ruling on § 3582(c) sentence-modification motions, district courts have "no duty to provide an on-the-record explanation of [their] reasons," but the Court concluded that it "need not go so far" because, "[e]*ven assuming*" that "district courts have equivalent duties when initially sentencing a defendant and when later modifying the sentence, what the District Court did here was sufficient." *Id.* at 1965 (emphasis added) (cleaned up). The Court reiterated that in the context of an original sentencing, the court "must adequately explain the chosen sentence to allow for meaningful appellate review" — meaning that it must "set forth enough to satisfy the appellate court that [it] has *considered* the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* (emphasis added) (quoting first *Gall v. United States*, 552 U.S. 38, 50 (2007), then *Rita v. United States*, 551 U.S. 338, 356 (2007)). But, the Court emphasized, "[j]ust how much of an explanation this requires . . . depends . . . upon the circumstances of the particular case." *Id.*

> In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others. But in other cases, more explanation may be necessary (depending, perhaps, upon the legal arguments raised at sentencing). That may be the case even when there is little evidence in the record affirmatively showing that the sentencing judge failed to consider the § 3553(a) factors. If the court of appeals considers an explanation inadequate *in a particular case*, it can send the case back to the district court for a more complete explanation.

*Id.* (emphasis added) (citation omitted).

Relying on these principles, the Supreme Court concluded that Chavez-Meza's sentence-modification motion presented the type of relatively "simpl[e]" case for which "there was not much else for the judge to say." 138 S. Ct. at 1967. It reached this conclusion even though Chavez-Meza, in asking for a reduction to the bottom of the amended range, had "stress[ed] various educational courses he had taken in prison" since his original sentencing. *Id.* But that was not enough for the Court to conclude that the district court's use of "a barebones form order" was inadequate. *Id.* Instead, the Court held that "given the *simplicity of this case*, the judge's *awareness* of the arguments, his *consideration* of the relevant sentencing factors, and the *intuitive reason* why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Id.* at 1967–68 (emphasis added).

*Chavez-Meza* thus forecloses the categorical rule advanced by High that district courts must not only *consider* the parties' arguments with respect to a sentence-modification motion but must also invariably *acknowledge and address* each of the defendant's arguments on the record. Instead, as *Chavez-Meza* makes plain, there are cases in which a "minimal" explanation suffices, while "in other cases, more explanation may be necessary." 138 S. Ct. at 1965, 1968.

In this case, what the district court said in light of the record was amply adequate to allow for meaningful appellate review. *First*, it is significant that the district judge who considered High's motion for a sentence reduction "was the same judge who had sentenced

13

[him] originally." *Chavez-Meza*, 138 S. Ct. at 1967. And at the original sentencing hearing in January 2019, that judge granted High a much more significant downward departure than the government had requested, imposing a total sentence of 84 months (60 of which were mandatory under § 924(c)), as compared to the government's proposal of 108 months or the Guidelines' advisory sentencing range of 147 to 168 months (when including the 60 months for the § 924(c) violation). In this context, it is hardly surprising that the district court would conclude that the § 3553(a) factors — which include "the need for the sentence imposed . . . to reflect the seriousness of the offense, . . . provide just punishment," and "avoid unwarranted sentence disparities," 18 U.S.C. § 3553(a)(2)(A), (a)(6) — counseled against reducing High's total term of imprisonment from 84 months to the approximately 27 months that High had at that point served. *Cf. Chavez-Meza*, 138 S. Ct. at 1967 (noting the district court's "intuitive reason" for not reducing the defendant's sentence to the extent he requested).

*Second*, the district court's decision implicitly responded to High's straightforward motion for compassionate release on the ground that his increased risk of contracting COVID-19 in prison and becoming severely ill or dying from it was an extraordinary and compelling reason for release. The court had appointed counsel to represent High in connection with the motion, which was the entire reason for the proceeding. And, in ruling, the court acknowledged that "[c]ompassionate release may be available to defendants where . . . extraordinary and compelling circumstances warrant a reduction in sentence." But the court also pointed out that such a reduction "must be consistent with applicable

14

policy statements issued by the United States Sentencing Commission" and be considered in light of the § 3553(a) factors.

And *third*, the court, in considering the § 3553(a) factors, added to its original consideration of them when it had sentenced High 19 months earlier by noting that High "committed the offense in this action soon after completing twenty years in state custody for a violent crime" (i.e., murder). The fact that High had a serious criminal history marked by recidivism following a lengthy term of imprisonment was thus clearly central to the court's conclusion that "the § 3553(a) factors caution[ed] against relief."

The court's rationale in this respect was both rational and legitimate under the statute. And most important to our consideration of High's argument, the court sufficiently explained its denial to allow for "meaningful appellate review." *Chavez-Meza*, 138 S. Ct. at 1965 (quoting *Gall*, 552 U.S. at 50). Indeed, the district court's explanation for its decision was significantly more fulsome than the district court explanation upheld as adequate in *Chavez-Meza*.

High nonetheless maintains that the district court was required to provide a more extensive explanation — one in which it "acknowledged and addressed" each of his arguments for relief — in light of our recent post-*Chavez-Meza* decision in *United States v. Martin*, 916 F.3d 389 (4th Cir. 2019). As in *Chavez-Meza*, the two defendants in *Martin* had each filed motions for sentence reductions under § 3582(c)(2) based on retroactive amendments to their advisory sentencing ranges, but the district court denied the motion in one case entirely and granted only limited relief in the other. *Id.* at 392–95. Laying the groundwork for our decision on appeal, we noted that *Chavez-Meza* "clarified that the

15

extent of explanation required depends on the facts of each case," and we further observed that our court had previously adopted "a *presumption* that the district court sufficiently considered relevant factors in deciding a section 3582(c)(2) motion." *Id.* at 396 (emphasis added) (citing *United States v. Legree*, 205 F.3d 724, 729–30 (4th Cir. 2000)). Nonetheless, because each of the defendants had presented a "significant amount of [post-sentencing] mitigation evidence," we concluded both that the "*Legree* presumption" had been rebutted and that their cases were of the more complex type contemplated in *Chavez-Meza*, where "a more robust and detailed explanation" was required. *Id.*; *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) ("Like the appellants in *Martin*, Appellants here have each spent nearly two decades in prison where, despite lengthy prison terms, they utilized the resources and programming they could access in prison to work toward rehabilitation. Under *Martin*, *that kind* of post-sentencing mitigating evidence is enough to require a district court to provide an explanation on the record of its reasons for deciding a sentencing reduction motion" (emphasis added)).

In the case before us, by contrast, there was no similar "mountain of new mitigating evidence," *Martin*, 916 F.3d at 396, which was, in large part, because the district court ruled on High's motion for a sentence reduction about a year-and-a-half after his sentence was imposed, not the "nearly two decades" that had elapsed in both *Martin* and *McDonald*. To be sure, High did emphasize that he had "earned his GED" and "completed several educational and vocational training programs," but his GED and those programs were completed during the 20 years he spent in state custody *before* he committed the instant federal offenses. In terms of his *post-sentencing conduct*, all High could point to was that

16

he had "completed courses in Drug Education and Wellness at Risk" and that he had not received any disciplinary infractions. While these are certainly positive factors, they are much more similar to the "various educational courses [Chavez-Meza] had taken in prison," 138 S. Ct. at 1967, than to the exceptional post-sentencing conduct of the defendants in *Martin* and *McDonald*.

As noted, there may well be instances where the denial of a motion for compassionate release based on elevated COVID-19 risks or actual contraction of COVID-19 requires "a more complete explanation" than the one provided in this case. *Chavez-Meza,* 138 S. Ct. at 1965. But the touchstone must be whether the district court "set forth enough to satisfy [our] court that [it] has *considered* the parties' arguments and has *a reasoned basis* for exercising [its] own legal decisionmaking authority," so as to "allow for meaningful appellate review." *Chavez-Meza*, 138 S. Ct. at 1965 (emphasis added) (cleaned up). And here, where the entire basis for High's § 3582(c)(1)(A) motion for immediate release was his particular vulnerability to COVID-19, we are confident that the district court was fully aware of and considered that claim before ultimately determining, based on its overall weighing of the § 3553(a) factors, that compassionate release was nonetheless not warranted. *See Legree*, 205 F.3d at 728 (recognizing that "a court need not engage in ritualistic incantation in order to establish its consideration of a legal issue" and that instead "[i]t is sufficient if the district court rules on issues that have been fully presented for determination," as "[c]onsideration is implicit in the court's ultimate ruling" (cleaned up)).

We thus conclude that, in light of this case's relative simplicity, where the district court was *aware* of the arguments, *considered* the relevant sentencing factors, and had an

17

"intuitive reason" for adhering to what was already a below-Guidelines sentence, its explanation for denying High's motion for compassionate release was adequate, "[falling] within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Chavez-Meza*, 138 S. Ct. at 1967–68. Accordingly, we affirm.

AFFIRMED