**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-7092**

───────────

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

 v.

JOSE JESUS GUTIERREZ, a/k/a Chuey,

 Defendant - Appellant.

───────────

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:03-cr-00405-GLR-2)

───────────

Argued:  October 25, 2022                         Decided:  January 18, 2023

───────────

Before NIEMEYER, HARRIS, and HEYTENS, Circuit Judges.

───────────

Vacated and remanded by unpublished opinion.  Judge Harris wrote the opinion, in which Judge Niemeyer and Judge Heytens joined.

───────────

**ARGUED:**  Justin Eisele, SEDDIQ LAW FIRM, Rockville, Maryland, for Appellant. Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Jose Gutierrez was convicted of conspiring to import and distribute large quantities of cocaine and marijuana, and sentenced to a prison term of 40 years. In 2021, after serving 16 years of his term, Gutierrez filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). For an "extraordinary and compelling" reason warranting release, Gutierrez relied primarily on his vulnerability to COVID-19. And in arguing that the § 3553(a) sentencing factors weighed in favor of relief, Gutierrez relied on extensive evidence of rehabilitation during the 16 years he had spent in prison. The district court denied relief in a form order, with a brief explanation focused on the severity of Gutierrez's original criminal behavior.

On appeal, Gutierrez argues that the district court did not adequately explain its denial of his motion. We agree. Under the circumstances of this case, Gutierrez's significant evidence of post-sentencing rehabilitation required a more robust and individualized explanation than that provided by the district court. Accordingly, we vacate the district court's denial of compassionate release and remand for reconsideration and a fuller explanation.

## I.

In 2005, after a five-day trial, a jury convicted Jose Gutierrez and his co-defendant, Laurencio Gonzalez, of conspiracy to import cocaine and marijuana from Mexico into the United States, *see* 21 U.S.C. § 963, and conspiracy to distribute and possess with intent to distribute cocaine and marijuana, *see* 21 U.S.C. § 846. There is no question that Gutierrez

2

played a central role in a large-scale and "successful narcotics trafficking business," responsible at one time for sending as much as 40 kilograms of cocaine to Baltimore, Maryland every ten days. *United States v. Gonzalez*, 222 F. App'x 238, 240–41 (4th Cir. 2007) (describing conspiracy and affirming convictions).

At sentencing, the district court adopted Gutierrez's presentence investigation report (PSR), which calculated a Sentencing Guidelines range of 360 to 960 months. The PSR recommended a sentence of 360 months' imprisonment on each count, to run concurrently. Instead, the court sentenced Gutierrez to concurrent prison terms of 480 months, or 40 years. The sentencing court's rationale is not available to us, as we have no transcript from the 2005 sentencing.

In June of 2021, after serving 16 years of his sentence, Gutierrez filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). That provision allows a district court, in its discretion, to reduce a sentence if it finds "extraordinary and compelling reasons" for the reduction. The court must also consider the sentencing factors set out in 18 U.S.C. § 3553(a) to the extent applicable. *See* 18 U.S.C. § 3582(c)(1)(A); *see generally United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021) (explaining process for deciding compassionate release motions).

To satisfy the "extraordinary and compelling reasons" requirement, Gutierrez pointed mostly to the COVID-19 pandemic and his vulnerability to COVID-19. Specifically, Gutierrez argued that he suffered from obesity, hyperlipidemia, hypertension, and chronic kidney disease, which increased his risk of serious illness from COVID-19, despite his vaccination. And he argued that his facility, FCI Lompoc, presented "numerous

troubling conditions" – including inadequate cleaning supplies and screening of inmate workers – that contributed to a high COVID-19 infection rate and put his health at "grave risk." J.A. 21.

Gutierrez also argued that the § 3553(a) sentencing factors favored release in his case. Here, he relied on extensive evidence of post-sentencing rehabilitation to show that he was a "changed person" after 16 years of incarceration. J.A. 36. In prison, he had taken numerous classes, received his GED, and was on track to earn an associate degree. He had learned to weld – becoming a welding teacher to over 150 students – and taken carpentry classes, providing him with job skills upon his release. He had served as a mentor to other inmates and as a recreation aide in prison. Attached to his motion were his lengthy educational records and numerous certificates of achievement. Also attached was a Bureau of Prisons risk assessment report, detailing an absence of disciplinary infractions and rating Gutierrez as presenting a "low" risk of recidivism and "minimum" risk of violence. J.A. 321.

In the ruling now on review, the district court denied Gutierrez's motion with a form order. At the start of the form, the judge – a different judge than the one who had sentenced Gutierrez in 2005 – checked a box indicating that he was reviewing a defendant-filed motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), and that he had considered "the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable

4

policy statements issued by the Sentencing Commission." J.A. 327.[1]  And at the end of the form, he checked the box for "DENIED after complete review of the motion on the merits." J.A. 329.  Finally, in an optional section for "FACTORS CONSIDERED," the court explained:

> The defendant was a large-scale narcotics trafficker, responsible for putting massive amounts of narcotics on the street.  The defendant was compensated in the millions for his efforts.  There can be no dispute that narcotics trafficking contributes to much of the death and violence occurring in this country.  The fact that no evidence suggests the defendant was directly responsible for violence, does not mitigate the fact that most of the violent criminal acts arise out of the narcotics trade.  While the Court applauds the rehabilitative efforts, others like the defendant need to be deterred from engaging in similar conduct.  The Court believes the public needs to be protected from the defendant.  He simply has not demonstrated he is entitled to the relief he requests.

*Id*.  Although the district court did not refer expressly to § 3553(a) in its explanation, it appears – and the parties agree – that the court was applying the § 3553(a) sentencing factors and denied Gutierrez's motion on that basis.

Gutierrez timely appealed.

---

[1] Any grant of compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(1)(A).  But we held in *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020), that there *are* no "applicable policy statements" in a case like this; the relevant policy statements apply only to compassionate-release motions filed by the Bureau of Prisons, and not to defendant-filed motions like Gutierrez's.  The government nevertheless urged the district court to deny Gutierrez's motion under a policy statement defining "extraordinary and compelling reasons," *see* U.S.S.G. § 1B1.13, because "*McCoy* was wrongly decided." J.A. 370 n.4.  If the form order's reference to "applicable policy statements" indicates that the district court deemed § 1B1.13 "applicable" to Gutierrez's motion – a question we need not resolve, given our disposition of this appeal – then that would be error under *McCoy*.  *See United States v. Kibble*, 992 F.3d 326, 330–31 (4th Cir. 2021) (per curiam).

## II.

On appeal, Gutierrez argues primarily that the district court's explanation of its denial of compassionate release failed to properly address his significant evidence of post-sentencing rehabilitation. Given the extent of his rehabilitation-related evidence, Gutierrez contends, our decision in *United States v. Martin*, 916 F.3d 389, 396 (4th Cir. 2019), called for an individualized and "more robust" explanation for why that evidence did not weigh in favor of a sentence reduction. We agree.

Resolution of a motion for compassionate release brought under § 3582(c)(1)(A)(i) "is a matter committed to the discretion of the district courts, and we review such rulings for abuse of discretion." *High*, 997 F.3d at 185. "In doing so, we ensure that the district court has not acted arbitrarily or irrationally, has followed the statutory requirements, and has conducted the necessary analysis for exercising its discretion." *Id.* Whether the district court's explanation for a denial of compassionate release is adequate – whether it reflects the "necessary analysis," *see id.* – is a question we consider *de novo*, *Martin*, 916 F.3d at 395.

There is no "categorical explanation requirement" mandating that a district court "*address* each of a defendant's arguments" when it rules on a compassionate-release motion. *See High*, 997 F.3d at 187 (internal quotation marks omitted). As noted above, a district court must consider the § 3553(a) sentencing factors in deciding whether to exercise its discretion to grant relief under § 3582(c)(1)(A)(i). *See id.* at 185–86. But that does not mean, as this court has emphasized, that a district court must "provide an exhaustive

6

explanation analyzing every § 3553(a) factor." *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021). Instead, the touchstone inquiry is "whether the district court set forth enough to satisfy our court that it has *considered* the parties' arguments and has *a reasoned basis* for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *High*, 997 F.3d at 190 (cleaned up).

How much explanation is "enough" depends on the complexity of a given case. *See Jenkins*, 22 F.4th at 170; *High*, 997 F.3d at 188–89. The Supreme Court made clear in *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018), that there is a category of "relatively simple" cases in which a "minimal explanation" will suffice. *High*, 997 F.3d at 188–89 (cleaned up) (quoting *Chavez-Meza*, 138 S. Ct. at 1967–68). In other cases, however, "a more complete explanation" may be required. *Id.* at 188 (quoting *Chavez-Meza*, 138 S. Ct. at 1965); *see Martin*, 916 F.3d at 395–96 (discussing *Chavez-Meza*'s distinction between simple cases requiring little explanation and other cases in which "more explanation" is necessary).

In this case, Gutierrez came forward with the kind of significant and extensive evidence of post-sentencing rehabilitation that takes a case out of the "simple" category and necessitates a "more robust" and "individualized" explanation. *See Martin*, 916 F.3d at 396; *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). We explained this principle in our *Martin* and *McDonald* cases, in which the defendants, over the course of long prison terms, "utilized the resources and programming they could access in prison to work toward rehabilitation," *see McDonald*, 986 F.3d at 412, earning GEDs, working with and mentoring other inmates, and compiling exemplary disciplinary records, *see id.* at 411;

7

*Martin*, 916 F.3d at 396 (describing successful completion of GED, tutoring of other inmates, and exemplary behavior while incarcerated as a "mountain of new mitigating evidence"). Given that "significant amount" of post-sentencing mitigation evidence, we concluded, these were cases of "the more complex type contemplated in *Chavez-Meza*" and thus necessitated a "more robust and detailed explanation." *High*, 997 F.3d at 190 (internal quotation marks omitted).

At oral argument, the government argued against application of *Martin* and *McDonald*, pointing instead to *High*, in which we found no need for a more detailed explanation where a defendant, over a roughly 18-month period, had taken drug education classes and avoided disciplinary infractions. *See High*, 997 F.3d at 190. We think that comparison badly understates the weight of Gutierrez's evidence. Gutierrez's unblemished disciplinary record extends for close to 17 years – just like the defendants in *Martin* and *McDonald*. *See McDonald*, 986 F.3d at 412 (noting that defendants in both cases showed evidence spanning "nearly two decades in prison"). And if anything, Gutierrez has presented *more* than the "mountain of new mitigating evidence" we relied on in *Martin*, 916 F.3d at 396, and *McDonald*: Like the defendants in those cases, Gutierrez has earned a GED, but he also has taken college classes that will lead to an associate degree; he has received vocational training certificates in carpentry and welding; he has become a welding teacher; and he has mentored other inmates and served as a recreation aide. All of this is attested to in the documentary evidence submitted with his motion, along with a Bureau of Prisons assessment that puts him at low risk of recidivism. This is a far cry from the taking of "various educational courses" that we considered in *High*. *High*, 997 F.3d at 190

8

(internal quotation marks omitted).  Instead, this is the kind of "exceptional post-sentencing conduct" that we considered in *Martin* and *McDonald*, which means that Gutierrez, too, was entitled to a more "detailed" explanation than in the ordinary case, *id.* – specifically, an "individualized explanation" for why "the multitude of redemptive measures" he has taken do not weigh in favor of relief under the § 3553(a) factors, *Martin*, 916 F.3d at 397.

Nor can we agree with the government that the district court provided such an explanation here.  It is true that the district court alluded to Gutierrez's evidence of post-sentencing rehabilitation when it "applaud[ed] the rehabilitative efforts." J.A. 329.  But that was one passing comment in an explanation otherwise devoted – like the explanation we deemed inadequate in *Martin* – to Gutierrez's "original criminal behavior."  *Martin*, 916 F.3d at 397.  And nothing about that comment acknowledges or reflects consideration of the exceptional breadth of Gutierrez's rehabilitative efforts.  Precisely the same passing reference, that is, could have been made with respect to the "various educational courses" at issue in *High* or to *any* defendant's post-sentencing rehabilitation evidence, no matter how limited or how significant.  The district court's nod to Gutierrez's "rehabilitative efforts," we acknowledge, is more than was present in cases like *Martin* and *McDonald*. But it does not satisfy the requirement of a "robust" and "individualized" explanation for how those efforts have been weighed under the § 3553(a) factors.  *Martin*, 916 F.3d at 396.

Indeed, virtually no part of the district court's explanation is "individualized" to Gutierrez or his motion for compassionate release.  Most of the court's paragraph-long discussion is devoted to the violence and other social costs associated with narcotics trafficking generally, and while those costs are indeed tragically high, the same points

could be made about any defendant convicted of a large-scale drug offense.  There is no discussion of Gutierrez's vulnerability to COVID-19, which Gutierrez raised as an "extraordinary and compelling reason" for relief and which bears as well on the § 3553(a) factors.  *See Kibble*, 992 F.3d at 332.  And in finding that the public still "needs to be protected from the defendant," J.A. 329, the district court did not note or account for what seems to be the Bureau of Prisons' contrary assessment – that Gutierrez presents a "low" risk of recidivism and "minimum" risk of violence, J.A. 321 – which makes it difficult to review that finding and assure that it rests on a "reasoned basis," *High*, 997 F.3d at 190.[2] To be clear, were this a simple case requiring only a "minimal" explanation, *id.* at 189, the district court's order might well be adequate.  But in a case made complex by significant evidence of post-sentencing rehabilitation, we require more, and the district court's order, on its face, does not satisfy the standard we have articulated.  *See Martin*, 916 F.3d at 397.

Nor, importantly, is this a case in which the rationale from Gutierrez's original 2005 sentencing can supplement or shed additional light on the explanation offered by the district court's form order.  As we explained in *High*, it is "significant" to our review of a

---

[2] There is one portion of the district court's explanation that is tailored to Gutierrez, describing him as having been "compensated in the millions for his efforts." J.A. 329.  But that more individualized finding does not appear to be supported by the record.  The record does indicate that Gutierrez "*transported* drug proceeds in the millions of dollars," J.A. 339 (emphasis added), and the government, in its brief, describes the conspiracy's operations as having "generated millions of dollars in drug proceeds," Br. of Appellee at 15.  But it does not necessarily follow that Gutierrez personally received millions of dollars in compensation.  The district court may simply have misspoken (or miswritten) when it alluded to "compensat[ion] in the millions," but under the circumstances, that comment cannot meaningfully bolster the court's explanation.

compassionate-release explanation if, as in that case, "the district judge who considered [the defendant]'s motion for a sentence reduction was the same judge who had sentenced him originally." 997 F.3d at 189 (cleaned up); *see also Chavez-Meza*, 138 S. Ct. at 1967. But here, the judge who considered Gutierrez's compassionate release motion in 2021 was not the same judge who sentenced him in 2005, so we cannot assume that the assessment of the § 3553(a) factors we are reviewing incorporated a judge's thinking from an earlier sentencing. *Cf. High*, 997 F.3d at 189. Moreover, we lack even a transcript from the 2005 sentencing, which leaves us with no way to "ascertain how the original sentencing court's rationale would interact with the host of mitigation evidence that arose post-sentencing," further frustrating meaningful appellate review. *Martin*, 916 F.3d at 397–98.

Taking all these circumstances together, we agree with Gutierrez that the district court failed to sufficiently explain its assessment of Gutierrez's evidence of post-sentencing rehabilitation and its denial of compassionate release.[3] We take no position on the ultimate disposition of Gutierrez's motion. Rather, we vacate the district court's order and remand for reconsideration and a fuller explanation, consistent with this opinion.

---

[3] Gutierrez argues that the district court further erred by denying his motion only under a weighing of the § 3553(a) factors, without first making a finding as to the existence of "extraordinary and compelling reasons." But we foreclosed that argument in *High*, affirming the denial of compassionate release based on a balancing of the § 3553(a) factors even though the district court did not resolve the "extraordinary and compelling reasons" question or "explicitly address" the defendant's arguments under that prong. *High*, 997 F.3d at 186–87; *see also Kibble*, 992 F.3d at 331–32 (affirming denial of compassionate release based on § 3553(a) analysis after identifying error in analysis of "extraordinary and compelling reasons" factor).

## III.

For the reasons given above, the judgment of the district court is vacated and the case remanded for proceedings consistent with this opinion.

*VACATED AND REMANDED*