**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 22-6607**

─────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

  v.

ANGEL MANUEL CENTENO-MORALES,

        Defendant – Appellant.

─────────

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:15-cr-00012-EKD-1)

─────────

Argued:  October 24, 2023                 Decided:  January 5, 2024

─────────

Before WILKINSON, AGEE, and RICHARDSON, Circuit Judges.

─────────

Affirmed by published opinion.  Judge Agee wrote the opinion in which Judge Wilkinson and Judge Richardson joined.

─────────

**ARGUED:**  Andrea Lantz Harris, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jonathan Patrick Jones, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:**  Juval O. Scott, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Christopher R. Kavanaugh, United States

Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

_____

AGEE, Circuit Judge:

Federal prisoner Angel Centeno-Morales moved for compassionate release under 18 U.S.C. § 3582(c) after his wife, who was the primary caregiver for their minor son, died of COVID-19. In his § 3582(c) motion, Centeno-Morales argued that his wife's death constituted an extraordinary and compelling reason for release and that a reassessment of the 18 U.S.C. § 3553(a) factors also favored his release given his changed circumstances and his post-sentencing rehabilitative conduct. The district court agreed that the death of Centeno-Morales' wife constituted an extraordinary and compelling reason for relief, but found that the § 3553(a) factors strongly weighed in favor of his continued incarceration. The district court therefore denied Centeno-Morales' motion for compassionate release. For the reasons set forth below, we affirm the district court's order denying relief.

I.

A.

Angel Centeno-Morales has a long criminal history of offenses involving drugs and violence. Before committing the offenses for which he is now incarcerated, he was previously convicted of aggravated assault with a deadly weapon, burglary, battery, illegal possession of weapons, and several drug offenses. In 2010, Centeno-Morales was convicted in Virginia state court for possession of methamphetamine with the intent to distribute. He was released from custody on probation in 2013 and almost immediately became involved in the drug trafficking conspiracy that led to his current incarceration.

3

From spring to fall of 2014, Centeno-Morales and his co-conspirators trafficked methamphetamine in and around Staunton, Virginia. Centeno-Morales often sold methamphetamine while in possession of a firearm. He frequently used a firearm to threaten those to whom he sold methamphetamine, particularly to prevent them from cooperating with law enforcement.

Centeno-Morales' enterprise ended in September 2014, when based on a tip from a confidential informant, law enforcement instigated a traffic stop of his vehicle. A search of the vehicle yielded $3,000 in cash and a loaded handgun. Centeno-Morales was arrested for possession of a firearm by a felon and later charged with drug offenses based on information received from informants.

Centeno-Morales entered into a plea agreement with the United States under which he pleaded guilty to distribution of more than 500 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and to possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). In exchange, the United States moved to dismiss six other charges. The district court, Judge Elizabeth K. Dillon presiding, accepted Centeno-Morales' plea and later sentenced Centeno-Morales to 180 months' imprisonment: 120 months for the distribution offense and a consecutive 60 months for the firearms offense.

B.

In May 2021, after serving about six years of his sentence, Centeno-Morales filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). In that motion,

4

Centeno-Morales argued that he should be released because of his poor health and the risks of COVID-19 in correctional facilities. Centeno-Morales argued that COVID-19, coupled with his medical conditions, created an extraordinary and compelling circumstance warranting release. The district court appointed counsel to represent Centeno-Morales, but she declined to file a supplemental brief.

C.

Before the district court could rule on this first motion for compassionate release, Centeno-Morales' wife died of COVID-19. Centeno-Morales, this time through his court-appointed counsel, filed a supplemental motion arguing that these circumstances also warranted release under § 3582(c)(1)(A).

In his supplemental motion, Centeno-Morales argued that the death of his wife left his minor son without a primary caregiver and created an additional extraordinary and compelling reason justifying an early release. In support of this contention, Centeno-Morales highlighted the importance of a parent's presence in the life of an adolescent and described the personal difficulties he experienced as a child without a father figure. Centeno-Morales then argued that the § 3553(a) factors favored his early release because of his disciplinary record, his rehabilitative efforts, and his post-release arrangements.

The Government opposed the motion. It conceded that the death of Centeno-Morales' wife constituted an extraordinary and compelling reason, but it argued that the § 3553(a) factors weighed in favor of Centeno-Morales' continued incarceration. The Government pointed to the violent nature of Centeno-Morales' offense, his criminal

history, the proximity of prior offenses to the ones for which he is incarcerated, his disciplinary infractions while incarcerated, and his potential danger to the community if released. The Government also noted that Centeno-Morales did not address whether anyone else was available to care for his son, nor did he show that his release would result in a more stable environment for his child.

As detailed below, the district court denied the motion.[*] Although the court agreed with the parties that Centeno-Morales could show "extraordinary and compelling reasons" to support his motion given the death of his wife, it disagreed with his argument that the § 3553(a) factors supported his release.

After the district court denied relief, Centeno-Morales noted a timely appeal. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3572.

II.

A.

At the outset, we note that ordinarily a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Congress provided an exception to that general rule—on which Centeno-Morales now relies—which permits courts to reduce a sentence or permit immediate release based on "extraordinary and

---

[*] In the same order, the district court also rejected the original grounds for the motion after concluding that Centeno-Morales had not shown that COVID-19 created for him an extraordinary and compelling reason for relief. Centeno-Morales does not challenge that finding on appeal.

compelling reasons warrant[ing]" such relief. *Id.* § 3582(c)(1)(A)(i). For many years, only the Director of the Federal Bureau of Prisons could make such a request. *Id.* § 3582(c)(1)(A) (2002). But in 2018, Congress enacted the First Step Act, which allows federal inmates to directly file motions for compassionate release once they have exhausted their administrative remedies. *See* Pub. L. No. 115–391, § 603(b), 132 Stat. 5194, 5239 (2018).

To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. First, the court must determine that the prisoner is eligible for a sentence reduction because he has shown "extraordinary and compelling reasons" for release. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id.* at 195. Those factors include, among others, "the nature and circumstances of the offense," "the history and characteristics of the defendant," and "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with . . . medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a).

District courts "enjoy broad discretion" in evaluating the § 3553(a) factors when deciding a motion for compassionate release. *United States v. Bethea*, 54 F.4th 826, 834

7

(4th Cir. 2022) (cleaned up). District courts must consider new arguments for sentence modification, but they need not address in turn every argument raised by the movant. *See United States v. High*, 997 F.3d 181, 188–89 (4th Cir. 2021). Rather, district courts must only "set forth enough to satisfy our court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Id.* at 190 (cleaned up).

It is "significant"—and weighs against finding an abuse of discretion—"when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834 (citation omitted). Indeed, "[w]hen the same sentencing judge assesses the § 3553(a) factors again for compassionate release purposes, there's a strong indication that the judge knows of the defendant's circumstances, both favorable and unfavorable, and considers the totality of the record when assessing whether a different sentence is now warranted." *Id.* (citation omitted).

A movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence. *See High*, 997 F.3d at 190. In this circuit, district courts are presumed to have sufficiently considered the relevant factors in deciding a motion for compassionate release, though the movant may rebut this presumption by presenting substantial post-sentencing mitigating evidence. *Id.* If the movant rebuts the presumption, the district court is required to provide a more thorough explanation in considering the motion. *Id.*

B.

The § 3553(a) step of the analysis governs the resolution of this case. The parties below agreed—and the district court found—that the death of Centeno-Morales' wife constituted an extraordinary and compelling circumstance. That conclusion—uncontested on appeal—is consistent with U.S.S.G. § 1B1.13(b)(3)(A), which explicitly identifies the death of the primary caregiver for an inmate's minor child as an extraordinary and compelling reason.

After finding that Centeno-Morales fulfilled the first prong of the inquiry, the district court denied the motion based on an analysis of the § 3553(a) factors. In its ruling, the district court recited the relevant § 3553(a) factors and concluded that they weighed against releasing Centeno-Morales. The district court then elaborated on the reasons for its determination: Centeno-Morales had distributed a large quantity of methamphetamine while on probation, he had used firearms for intimidation and coercion, and he had received two disciplinary infractions while serving his current sentence. The district court expressed sympathy for Centeno-Morales' loss, but it nonetheless concluded that his continued incarceration was "necessary to reflect the seriousness of Centeno-Morales' offenses, protect the public from further crimes, provide for just punishment, promote respect for the law, and provide deterrence." *United States v. Centeno-Morales*, No. 5:15-cr-00012, 2022 WL 1547832, at *4 (W.D. Va. May 16, 2022).

We review the district court's denial of Centeno-Morales' motion for compassionate release for abuse of discretion. *High*, 997 F.3d at 185. "A district court abuses its discretion

9

when it acts arbitrarily or irrationally, fails to follow statutory requirements, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *Bethea*, 54 F.4th at 831 (cleaned up). Under this standard, this Court may not substitute its own judgment for that of the district court. *United States v. Vidacak*, 553 F.3d 344, 348 (4th Cir. 2009).

## C.

The district court did not abuse its discretion in analyzing the § 3553(a) factors and concluding that those factors did not warrant relief even though Centeno-Morales satisfied the first step of showing extraordinary and compelling circumstances. First, the record reflects that the district court did not overlook any of Centeno-Morales' arguments about post-sentencing mitigation or rehabilitation. Rather, the record shows that the district court considered each argument Centeno-Morales raised. Second, the district court was not required to offer a detailed explanation of its reasoning on each of Centeno-Morales' arguments. Centeno-Morales failed to present evidence of rehabilitation sufficient to warrant the robust and detailed explanation he requests. Third, and finally, that the same judge presided over both Centeno-Morales' sentencing and motion for compassionate release weighs heavily in favor of affirming the district court's ruling, even if it lacked some detail or depth, because it demonstrates the judge had an overarching familiarity with Centeno-Morales' history. We address each of these conclusions in turn.

First, nothing in the record suggests that the district court overlooked Centeno-Morales' arguments about his changed circumstances. In fact, the district court explicitly acknowledged Centeno-Morales' loss at least twice, but it still concluded that the

10

§ 3553(a) factors weighed in favor of his continued incarceration. The district court was not required to address all the possible implications of the death of Centeno-Morales' wife. *See High*, 997 F.3d at 190 (rejecting the notion that the court must "acknowledge[] and address[]" each argument raised by a movant in a motion for compassionate release). Our precedent requires only that the district court consider evidence of post-sentencing changed circumstances in evaluating the § 3553(a) factors. *Id.* at 188–89. The record shows that the district court fulfilled its obligation here, particularly as Centeno-Morales never addressed why no other party was available and suitable to serve as the minor child's caregiver.

Second, the district court owed Centeno-Morales no detailed explanation of its reasoning on his arguments about post-sentencing rehabilitation. We have previously held that where a movant presents substantial evidence of post-sentencing rehabilitative efforts, a district court must provide "a more robust and detailed" explanation in ruling on a motion for compassionate release. *High*, 997 F.3d at 190 (quoting *United States v. Martin*, 916 F.3d 389, 396 (4th Cir. 2019)). But that requirement is the exception, not the rule. The movant in *Martin* presented "a mountain of new mitigating evidence that the sentencing court never evaluated." *Martin*, 916 F.3d at 396. What's more, the movant in *Martin* was incarcerated for nearly two decades, became a respected tutor for other inmates, and exhibited such exemplary behavior that correctional staff moved her into a low-security facility. *Id.* But our guidance in *Martin* was based on the specific record presented to the district court in that case. We have repeatedly observed that district courts must only "set forth enough to satisfy our court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate

11

review." *High*, 997 F.3d at 190 (cleaned up). Thus, the district court does not owe every movant for compassionate release a "robust and detailed" explanation on every argument about post-sentencing rehabilitative efforts. *Id.*; *Martin*, 916 F.3d at 396.

Moreover, Centeno-Morales presented no "mountain" of mitigating evidence here. He completed just a few vocational courses and received two disciplinary infractions while incarcerated. Importantly, he remains classified as a "medium" security inmate. This is not the kind of exceptional post-sentencing evidence for which *Martin* would require a "robust and detailed" explanation on a motion for compassionate release. *Martin*, 916 F.3d at 396. Rather, as we have repeatedly affirmed, the district court was only required to "consider[] the parties' arguments" and exercise "a reasoned basis" for its decision. *High*, 997 F.3d at 190. The record reflects that the district court amply fulfilled that obligation here.

Third, and of final relevance to our review, we note that the same judge presided over both Centeno-Morales' sentencing and his motion for compassionate release, a factor that we have previously deemed relevant when reviewing the sufficiency of a court's explanation for its denial of a motion for compassionate release. In short, because Judge Dillon presided over both proceedings, she is presumed to have known of Centeno-Morales' circumstances—both favorable and unfavorable—and to have considered the totality of the record when ruling on Centeno-Morales' motion for compassionate release. *Bethea*, 54 F.4th at 834.

The record shows that the district court did not ignore or inadequately explain its reasoning on Centeno-Morales' arguments about the death of his wife or his rehabilitative efforts. The district court acknowledged both Centeno-Morales' loss and his prison

12

disciplinary record in its decision. Absent some conspicuous absence in the district court's decision, we presume that the district court considered all the relevant evidence. The presumption is stronger still when the same judge sentenced the defendant and later decided the motion for compassionate release. Centeno-Morales points to nothing here sufficient to overcome that presumption. On each of these issues—changed circumstances and mitigating evidence—Centeno-Morales bore the burden of persuasion. *See High*, 997 F.3d at 190. Centeno-Morales failed to meet that burden. He points to no mountain of evidence ignored by the district court. And before this Court at oral argument, Centeno-Morales again failed to explain why he was the best or only option to care for his son. At each stage, Centeno-Morales failed to present compelling evidence—as was his responsibility—and his motion therefore fails. This Court will not overturn a denial of a motion for compassionate release for abuse of discretion absent a showing that the district court overlooked some substantial mitigating evidence produced by the movant. That did not happen here.

III.

The district court did not abuse its discretion in denying Centeno-Morales' motion for compassionate release. The record does not support Centeno-Morales' contention that the district court ignored his arguments about post-sentencing conduct and changed circumstances. Rather, the record reflects that the district court explicitly considered each of those arguments. Further, our precedent does not require that a district court engage in

depth with each new argument raised by a defendant when hearing a motion for compassionate release. All our precedent requires, absent substantial mitigating evidence, is that the district court consider new arguments when evaluating the § 3553(a) factors. The district court did so here and therefore did not abuse its discretion in denying Centeno-Morales' motion for compassionate release.

Accordingly, we affirm the judgment of the district court denying Centeno-Morales' motion for compassionate release.

*AFFIRMED*