**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-6432**

UNITED STATES OF AMERICA,

　　　　　　　Plaintiff – Appellee,

　　　v.

TYRONE A. DAVIS,

　　　　　　　Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  David J. Novak, District Judge.  (3:21-cr-00100-DJN-1)

Argued:  March 19, 2025　　　　　　　　　　　Decided:  May 12, 2026

Before THACKER, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by published opinion.  Judge Rushing wrote the opinion, in which Judge Thacker and Judge Richardson joined.

**ARGUED:**  Cameron Scott Davis, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  James Reed Sawyers, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant.  Jessica D. Aber, United States Attorney, Richmond, Virginia, Vetan Kapoor, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

RUSHING, Circuit Judge:

Relying on a retroactive amendment to the Federal Sentencing Guidelines, Tyrone Davis moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). The same district court judge who had sentenced Davis two years earlier denied his motion, finding him eligible for a reduction but ultimately concluding that "the applicable § 3553(a) factors" and Davis's "disciplinary record . . . while incarcerated" weighed against reducing his sentence. J.A. 96.

Davis appeals. He claims the district court failed to justify his "above-Guidelines sentence" or consider his post-sentencing evidence of rehabilitation. We disagree on both fronts. A motion to reduce a final sentence does not trigger a plenary resentencing or the explanatory requirements attendant to such proceedings. Because the district court here faithfully adhered to the requirements of Section 3582(c)(2), we affirm.

I.

A.

In March 2021, Richmond police officers arrested Davis for unlawfully possessing a firearm as a convicted felon. Davis was exiting a convenience store when an officer noticed a weapon on his person and approached him to ask about the suspected gun. But Davis refused to stop, and when the officer tried to detain him, Davis resisted. In the ensuing scuffle, Davis appeared to reach for the gun and threatened to fight and spit on one of the arresting officers. After apprehending Davis, the officers searched him and recovered a loaded "privately made firearm" and distributable amounts of fentanyl. Davis was charged with possessing ammunition as a convicted felon, in violation of 18 U.S.C.

2

§ 922(g)(1), and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  He pled guilty to the ammunition charge.

In preparation for sentencing, the Probation Office determined that Davis had a criminal history score of 5 and category of III, based in part on "status points" added because Davis was on probation when he committed the offense.  *See* U.S.S.G. § 4A1.1(d) (2021).  At Davis's sentencing on February 4, 2022, the district court reviewed a letter from Davis's mother, heard argument from counsel, and permitted Davis to read a letter addressed to the court.  Considering the 18 U.S.C. § 3553(a) factors, the court addressed the dangerousness of Davis's possession of a loaded ghost gun and fentanyl and also emphasized that the way Davis "reacted to the police" was "just not acceptable."  J.A. 52.  Regarding Davis's history and characteristics, the court recognized his "mental health issues" that were "exasperated [sic] by the very difficult childhood that he has had," but explained that his criminal history at a relatively young age "speaks for the danger to the community."  J.A. 53; *see also* J.A. 54 ("I'm very concerned about the safety of the public upon his release.").  The court ultimately imposed a within-Guidelines sentence of 70 months' imprisonment and recommended to the Bureau of Prisons (BOP) that Davis receive access to GED, vocational, mental health, and substance abuse treatment programs.

## B.

The U.S. Sentencing Commission subsequently promulgated Amendment 821 and made the amendment retroactive.  *See* U.S.S.G. Supp. to App. C, amend. 821, part A, at 234–236, 240–241 (U.S. Sent'g Comm'n 2023); *id.* amend. 825, at 260–263.  Part A of the amendment limits the impact of "status points" under Section 4A1.1.  *See id.* amend. 821,

part A, at 234–236. Previously, defendants like Davis received two status points if they committed an offense while under a criminal justice sentence, including probation. Under Amendment 821, that number dropped to either one or zero, depending on the defendant's criminal history. *See* U.S.S.G. § 4A1.1(e) (Nov. 1, 2023). It is undisputed that under Amendment 821, Davis would receive no status points, thereby reducing his criminal history score and category. In turn, Davis's advisory Guidelines range would decrease from 57 to 71 months to 51 to 63 months.

On March 19, 2024, Davis moved the district court for a sentence reduction under 18 U.S.C. § 3582(c)(2), seeking a decrease in his sentence from 70 months to 62 months. In his counseled motion, Davis claimed that a sentence reduction "will enable [him] to begin the next phase of his life more effectively," as "due to a capias in Virginia state court," he was unable to participate in BOP's residential drug abuse program. J.A. 66. Despite this restriction, he contended that he had "focused on his rehabilitation" during his incarceration, namely he "enrolled in GED courses, maintained employment as an orderly, [] began mental health treatment," "completed courses on important subjects like soft skills, personal finance, science, history, and math," and "hopes to start a transportation company with his brother" upon release. J.A. 66–67. He did not attach any documentation to his motion.

The Government opposed Davis's motion, arguing that neither the Section 3553(a) factors nor Davis's post-sentencing conduct warranted a reduction. Notably, the Government produced documentation showing that Davis had committed three disciplinary violations while incarcerated. He impermissibly altered prison-issued pants,

4

possessed an iPhone in his cell, and threatened prison officials with bodily harm. In the threat incident, prison guards had placed Davis in four-point restraints "due to his assaultive and disruptive behavior," at which point Davis began "yelling loudly in an angry tone" at one of the guards: "F*** you []! . . . That's alright I'm from Richmond! I'm gonna call all my Richmond n****s on you and your kids and they're gonna kill you! F*** you []! You don't know who the f*** you are f***ing with!" J.A. 83. Noting that Davis's outburst resembled both his conduct at the time of arrest and disciplinary violations during previous terms of incarceration, the Government argued that a sentence reduction would "be to the detriment of public safety." J.A. 78.

The same district court judge who originally sentenced Davis denied his motion in a five-page written order on April 18, 2024. The court first acknowledged that Davis "qualifies as eligible for a sentence reduction" under Amendment 821 and observed that his Guidelines range under Amendment 821 was "51 to 63 months (a reduction from the 57-to-71-month range at the time of his sentencing)." J.A. 94, 96. The court then stated it must "reanalyze the 18 U.S.C. § 3553(a) sentencing factors," which it listed, "to determine that [Davis's] sentence is 'sufficient, but not greater than necessary,' to achieve the goals of sentencing." J.A. 95. The court observed that it "already considered the applicable § 3553(a) factors at sentencing, which drove [Davis's] original sentence" of 70 months. J.A. 96. Then the court announced that "the applicable § 3553(a) factors weigh against granting [Davis's] Motion, as does his disciplinary record that he has incurred while incarcerated." J.A. 96.

5

The district court went on to explain its reasoning. First, "[t]he nature and circumstances of the offense cut against [Davis]" because he resisted arrest and "a search incident to arrest revealed that [Davis] was carrying a loaded firearm with three rounds of ammunition." J.A. 96. Second, the court explained that Davis "has accrued numerous disciplinary violations while in prison, including destruction of property, threatening bodily harm and possession of a hazardous tool." J.A. 96. In the court's view, those post-sentencing "disciplinary violations demonstrate[d] a lack of adequate rehabilitation and the need for [Davis's] continued incarceration under his original sentence." J.A. 96. Third, Davis's possession of a firearm and ammunition as a convicted felon represents a crime that "persists as a serious public safety problem across the Nation." J.A. 96. "As reflected by the Plea Agreement and Statement of Facts here, [Davis] knew of the illegality of possessing a firearm as a convicted felon yet persisted to do so." J.A. 96–97.

The district court concluded that "[t]he need to protect the public, afford adequate deterrence and provide just punishment for the offense therefore all cut against a sentence reduction here." J.A. 97. Davis timely appealed, and we have jurisdiction. *See* 18 U.S.C. § 3742; 28 U.S.C. § 1291.

## II.

We review the district court's denial of a motion for a sentence reduction for abuse of discretion. *See United States v. Smalls*, 720 F.3d 193, 195 (4th Cir. 2013). To the extent Davis seeks more explanation from the district court, the "question of whether a court ruling on a § 3582(c)(2) motion must provide an individualized explanation is one of law that we consider de novo." *Id.*

6

III.

A.

Ordinarily, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(2) creates a discrete exception to this general rule of finality for "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" by way of retroactive amendment. *Id.* § 3582(c)(2). "There is no right to a sentence reduction under § 3582(c)(2)." *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019). But the court in its discretion "may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see Smalls*, 720 F.3d at 195 ("Whether to reduce a sentence and to what extent is a matter within the district court's discretion.").

The Supreme Court has outlined a two-step process for ruling on such a motion. First, a district court must "follow the Commission's instructions in [U.S. Sentencing Guidelines Manual] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon v. United States*, 560 U.S. 817, 827 (2010). To that end, the court "'determine[s] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting U.S.S.G. § 1B1.10(b)(1)). Second, the court must then "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is

7

warranted in whole or in part under the particular circumstances of the case." *Id.*; *see also United States v. Peters*, 843 F.3d 572, 577 (4th Cir. 2016) (describing the "discretionary second step" of the Section 3582(c)(2) inquiry). The court "shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction," and "may consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment" in determining whether, and to what extent, a reduction is warranted. U.S.S.G. § 1B1.10, cmt. 1(B)(ii)–(iii).

In outlining this framework, the Supreme Court has made clear that "[b]y its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding." *Dillon*, 560 U.S. at 825. Instead, the statute's "text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826; *see also* U.S.S.G. § 1B1.10(a)(3) ("[P]roceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant."); Fed. R. Crim. P. 43(a)(3), (b)(4) (requiring a defendant's presence at "sentencing," but expressly excluding proceedings that "involv[e] the . . . reduction of sentence under . . . 18 U.S.C. § 3582(c)"). A motion pursuant to Section 3582(c)(2) is not "'a do-over of an original sentencing proceeding.'" *Peters*, 843 F.3d at 574 (quoting *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000)).

"'[A]bsent a contrary indication,' we presume a district court deciding a § 3582(c)(2) motion has considered the 18 U.S.C. § 3553(a) factors and other pertinent matters before it." *Smalls*, 720 F.3d 195–196 (quoting *Legree*, 205 F.3d at 728–729); *see Martin*, 916 F.3d at 396. The court "need not engage in ritualistic incantation in order to

8

establish its consideration" of the relevant issues. *Legree*, 205 F.3d at 728 (internal quotation marks omitted); *see Smalls*, 720 F.3d at 199 (courts need not "consider those factors *on the record*"). Rather, "[i]t is sufficient if the district court rules on issues that have been fully presented for determination. Consideration is implicit in the court's ultimate ruling." *Legree*, 205 F.3d at 728 (internal quotation marks and ellipsis omitted). *Legree* thus establishes that, "in the absence of evidence a court neglected to consider relevant factors, the court does not err in failing to provide a full explanation for its § 3582(c)(2) decision." *Smalls*, 720 F.3d at 196. As indicated, however, this presumption is rebuttable, and significant evidence of "mitigating factors not available at the original sentencing," left entirely unaddressed by the court in deciding a reduction motion, has been used "to rebut the *Legree* presumption" and require more explanation. *Martin*, 916 F.3d at 396; *see also Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018) (upholding the district court's use of a "barebones form order" denying a Section 3582(c)(2) motion "given the simplicity of this case," but acknowledging that "a more detailed explanation" may be required "under different facts and a different record" (emphasis omitted)).

### B.

Applying this framework to Davis's motion, the district court did not abuse its discretion in denying his request for a sentence reduction, nor was it legally required to provide more explanation. Following the two-step process identified by the Supreme Court, the district court first determined that Davis was eligible for a sentence reduction, which no party disputes on appeal. The court identified the amended Guidelines range "of

9

51 to 63 months" and how it compared to Davis's sentence of "70 months' incarceration, which at the time [of sentencing] fell within the applicable Guidelines range of 57 to 71 months." J.A. 94. Moving to the second step, the court "consider[ed] any applicable § 3553(a) factors and determine[d] . . . in its discretion" that a reduction was not "warranted . . . under the particular circumstances of the case." *Dillon*, 560 U.S. at 827; *see* J.A. 96–97. Because the court ruled on whether the Section 3553(a) factors and post-sentencing conduct warranted a reduction, its consideration of those pertinent matters "is implicit in the court's ultimate ruling." *Legree*, 205 F.3d at 728 (internal quotation marks omitted); *see Smalls*, 720 F.3d at 195–196. But the court did not leave its reasoning entirely implicit—it said more.

For starters, the court emphasized that it had "considered the applicable § 3553(a) factors at sentencing" two years earlier and that those factors "drove [Davis's] original sentence." J.A. 96. "[I]t is significant that the district judge who considered [Davis's] motion for a sentence reduction 'was the same judge who had sentenced [him] originally.'" *United States v. High*, 997 F.3d 181, 189 (4th Cir. 2021) (quoting *Chavez-Meza*, 585 U.S. at 118). And "the less time there is between the court's sentencing-phase § 3553(a) analysis and its [reduction] assessment, the more consequential this [] consideration becomes," creating "a strong indication that the judge knows of the defendant's circumstances, both favorable and unfavorable, and considers the totality of the record when assessing whether a different sentence is now warranted." *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022). Here, the same judge sentenced Davis only two years earlier, a shorter gap of time than this Court has previously found to indicate continued

10

familiarity. *See*, *e.g.*, *United States v. Centeno-Morales*, 90 F.4th 274, 277, 281 (4th Cir. 2024) (approximately six years); *Smalls*, 720 F.3d at 197 ("[Defendant] filed, and the same district judge addressed, several motions during the fifteen-year period [between his original sentencing and his reduction motion], suggesting that the judge remained familiar with the facts of [his] case.").

In addition, the district court highlighted afresh the particularly important Section 3553(a) factors that it found "cut against a sentence reduction here." J.A. 97. Specifically, the court identified the "nature and circumstances of the offense"—which involved "carrying a loaded firearm with three rounds of ammunition" and resisting arrest—as well as "[t]he need to protect the public, afford adequate deterrence and provide just punishment" in view of the "serious public safety problem" posed by "illegal possession of firearms and ammunition by convicted felons" and Davis's persistence in possessing a firearm despite knowing "the illegality" of doing so. J.A. 96–97.

The court also expressly addressed Davis's post-sentencing conduct. The court explained that Davis's prison disciplinary violations—"including destruction of property, threatening bodily harm and possession of a hazardous tool"—"demonstrate a lack of adequate rehabilitation and the need for [Davis's] continued incarceration under his original sentence." J.A. 96. That finding implicitly rejected Davis's argument that his prison activities demonstrated "enormous strides" in rehabilitation. J.A. 67.

Davis argues that the district court was required to say more about his post-sentencing conduct, contending that he has overcome the *Legree* presumption. He notes that the court did not specifically mention any of the positive prison conduct he listed in

11

his motion. But, as our precedent demonstrates, the presumption is not rebutted simply because a defendant identifies some new mitigation evidence; rather, we have consistently emphasized the quantity and quality of new mitigation evidence when finding the presumption of judicial consideration rebutted and more explanation required. *See United States v. Davis*, 99 F.4th 647, 660 (4th Cir. 2024) (explaining that our cases requiring "an individualized explanation" turned on "the nature and volume of evidence presented by appellants"); *cf. Centeno-Morales*, 90 F.4th at 281 (emphasizing that overcoming the *Legree* presumption to require a more robust explanation is "the exception, not the rule").

*Chavez-Meza* sets the baseline. There, the Supreme Court held that an offender's evidence that he took "educational courses" but also had "broken a moderately serious rule while in prison" required nothing more than a form order saying the district court "had 'considered' petitioner's 'motion'" and "'tak[en] into account'" the relevant factors. 585 U.S. at 118. Similarly, in *United States v. High*, the offender "had 'completed courses,'" received no disciplinary infractions, and, during a prior period of incarceration before his most recent sentencing, had earned his GED and completed several educational and vocational programs. 997 F.3d at 190. Finding this evidence "much more similar to" *Chavez-Meza* than to the "exceptional" cases in which we have required a more detailed explanation, we concluded that the district court was not required to address that evidence at all in denying the offender's reduction motion. *Id.*

By contrast, in *United States v. Martin*, we held that two movants had rebutted the presumption of adequate consideration and their cases were the more complex type contemplated in *Chavez-Meza*, where "a more robust and detailed explanation" was

12

required.  916 F.3d at 396.  The movants there presented "a mountain of new mitigating evidence that the sentencing court never evaluated." *Id.*; *see id.* at 397.  Both were elderly prisoners who had amassed uncommonly significant rehabilitation records in their decade of incarceration, resulting in transfer to low security facilities and even some work outside the prison.  *Id.* at 396–397; *see id.* at 397 ("The Government . . . conceded that Martin's post-sentencing behavior is among the best that it has seen.").  Similarly, in *United States v. McDonald*, we remanded for individualized explanations where the movants had presented "extensive" rehabilitation evidence spanning almost two decades, including "earn[ing] low levels of security clearance."  986 F.3d 402, 411 (4th Cir. 2021).  We found the district court's form orders—which "merely included a single checkmark" and "a single sentence" stating the term of imprisonment—insufficient in that context.  *Id.* at 412.  In both *Martin* and *McDonald*, the court's failure to address such "exceptional post-sentencing evidence" presented a "conspicuous absence in the district court's decision" that rebutted our ordinary presumption that the court "considered all the relevant evidence." *Centeno-Morales*, 90 F.4th at 281.

No similar "conspicuous absence" exists here.  *Id.*  For starters, Davis "presented no 'mountain' of mitigating evidence." *Id.*  The two years between his sentencing and reduction motion represent "a tiny fraction of the 'nearly two decades' that had elapsed in both *Martin* and *McDonald*." *Davis*, 99 F.4th at 660 (quoting *High*, 997 F.3d at 190).  During that time, Davis claims he has "enrolled" in GED courses, "completed" some courses, maintained employment as an orderly, "began" mental health treatment, and "work[ed] on" a release plan.  J.A. 67; *cf.* J.A. 42, 51 (sentencing transcript stating Davis

13

was already "enrolled in GED" and "working on the GED" before his original sentencing). "While these are certainly positive factors, they are much more similar to the 'various educational courses [Chavez-Meza] had taken in prison,' [585 U.S. at 118], than to the exceptional post-sentencing conduct of the defendants in *Martin* and *McDonald*." *High*, 997 F.3d at 190.

Moreover, like Chavez-Meza and unlike the movants in *Martin* and *McDonald*, Davis's post-sentencing conduct is not uniformly positive. Far from it. Davis's "assaultive and disruptive behavior" in prison landed him in four-point restraints. J.A. 83. He then threatened to send people in Richmond to kill a prison guard and his family, even more troubling given that at some point Davis had an illicit cell phone behind bars. *Cf. Centeno-Morales*, 90 F.4th at 281 (holding no individualized explanation required when movant "completed just a few vocational courses," "received two disciplinary infractions while incarcerated," and "remains classified as a 'medium' security inmate"). And the district court actually addressed on the record this aspect of Davis's post-sentencing conduct, finding it showed a lack of rehabilitation—the very thing Davis had attempted to prove with his list of good deeds.

Put simply, Davis has not shown that the district court "overlooked some substantial mitigating evidence" he produced; therefore, the presumption of judicial consideration has not been rebutted. *Id.* at 282. "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." *Davis*, 99 F.4th at 659. The judge here provided an explanation beyond the "barebones form" sanctioned by *Chavez-Meza* and "'set forth enough to satisfy [this C]ourt that he has

14

considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Meza*, 585 U.S. at 113 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

C.

To avoid this result, Davis makes two arguments for changing the procedural requirements that apply to his case. Both arguments rest on the faulty premise that a motion for a sentence reduction initiates a plenary resentencing, with its concomitant explanatory rigor. Because that's not the case, his demands for additional explanation on this score also fail.

1.

First, Davis argues that because his amended Guidelines range of 51 to 63 months fell below his original 70-month sentence, the district court "implemented a *de facto* upward variance" when it denied his reduction motion and left his sentence intact. Opening Br. 30. Citing *Gall v. United States*, 552 U.S. 38 (2007), regarding the standards for imposing an outside-Guidelines sentence, Davis claims that "the court failed to justify its above-guidelines sentence" with a sufficiently compelling explanation. Opening Br. 16.

Because the district court here did not impose a sentence at all, we disagree. *Gall*'s instructions for justifying "an outside-Guidelines sentence" apply in a "sentencing proceeding" where a district court "impose[s]" a sentence. *Gall*, 552 U.S. at 49–51. Section 3582(c)(2), however, "does not authorize a sentencing or resentencing proceeding" but "only a limited adjustment to an otherwise final sentence." *Dillon*, 560 U.S. at 825–826; *cf. United States v. Hargrove*, 30 F.4th 189, 199 (4th Cir. 2022) ("[T]he court was not

15

*imposing* a sentence; it was being asked to *reduce* a sentence that was already legally imposed."). Indeed, the Supreme Court has emphasized the "highly significant," "fundamental differences between sentencing and sentence-modification proceedings," including their "substantially different purpose[s]" and "the circumscribed nature of proceedings under" Section 3582(c)(2). *Dillon*, 560 U.S. at 830.

Importantly, "[t]he authorization of . . . a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence." U.S.S.G. § 1B1.10 Background; *see also Peters*, 843 F.3d at 574 (Section 3582(c)(2) is not "a do-over of an original sentencing proceeding." (internal quotation marks omitted)). The Sentencing Commission's decision to give offenders like Davis the opportunity to seek reduction of their sentence based on Amendment 821 did not unsettle his existing sentence, which remains valid and justified under the Guidelines in place at the time of his sentencing. *See* 18 U.S.C. § 3582(b) ("[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment . . . ."); *Martin*, 916 F.3d at 398 ("There is no right to a sentence reduction under § 3582(c)(2)."). When the district court denied his reduction motion and retained the original sentence, it was not required to justify that sentence anew by reference to the amended Guidelines range that would apply if Davis were being resentenced today because, quite simply, he was not being resentenced. *See Dillon*, 560 U.S. at 831 ("§ 3582(c)(2) does not authorize a resentencing.").

The district court here acknowledged that Davis's sentence of "70 months' incarceration" fell within "the 57-to-71-month range at the time of his sentencing" and was outside the "reduced Guidelines range of 51 to 63 months." J.A. 94; *see also* J.A. 97

16

("[T]he Court has considered the impact of the revisions to the Sentencing Guidelines . . . ."). Yet the court determined that "the applicable § 3553(a) factors" and Davis's prison "disciplinary record" demonstrated the need for his "continued incarceration under his original sentence." J.A. 96. Having explained its reasons for denying Davis's motion, the court was not required to justify his original sentence anew.

2.

Second, Davis argues that the *Legree* presumption does not apply "to a situation where an original, within-guidelines sentence becomes an above-guidelines sentence after a retroactive sentencing guidelines amendment." Opening Br. 12. This Court, however, has long applied "the normal presumption of due consideration of sentencing factors" when reviewing a district court's resolution of a sentence reduction motion based on a retroactive Sentencing Guidelines amendment. *Legree*, 205 F.3d at 729; *see also*, *e.g.*, *Smalls*, 720 F.3d at 199; *Peters*, 843 F.3d at 579; *Martin*, 916 F.3d at 396. In each case where the defendant was eligible for a reduction, the amended Guidelines range was necessarily lower than the range applicable at sentencing. *See* 18 U.S.C. § 3582(c)(2) (section applies only to a defendant sentenced "based on a sentencing range that has subsequently been lowered"). Yet we have not wavered from the presumption in any circumstance, even when the reduced Guidelines range has dipped below the offender's existing sentence. *See*, *e.g.*, *United States v. May*, 783 Fed. App. 309, 310 (4th Cir. 2019) (applying the *Legree* presumption to a district court's decision denying a Section 3582(c)(2) motion and maintaining the defendant's 240-month sentence when the revised Guidelines range was 190 to 222 months); *United States v. May*, No. 1:07-cr-58-JPJ-PMS, 2019 WL 699948, at

17

*2 n.1 (W.D. Va. Feb. 20, 2019) (stating revised Guidelines range). We certainly have not required district courts, as Davis would have it, to explicitly address pre- and post-amendment sentencing disparities every time the "maximum recommended sentence" changes, which is to say, in the vast majority of Section 3582(c)(2) cases. Opening Br. 24 (arguing that every such "change in sentencing guidelines implicates § 3553(a)(6)").

More fundamentally, Davis identifies no reason why a sentence's relation to the reduced Guidelines range should change our application of the presumption, which is based on our understanding of how courts make their decisions. *See Legree*, 205 F.3d at 728–729. For example, he offers no reason to think that due consideration of all Section 3553(a) factors and other pertinent matters ceases to be "'implicit in the court's ultimate ruling'" when the amended Guidelines range moves below an offender's existing sentence. *Id.* at 728 (quoting *United States v. Davis*, 53 F.3d 638, 642 (4th Cir. 1995)). At bottom, Davis's response suffers the same logical fallacy as his first argument by assuming that the district court imposed a sentence at all, much less an "above-guidelines" one.

In a final effort, Davis analogizes to motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A), but we consistently apply the *Legree* presumption in that context too. *See, e.g., Centeno-Morales*, 90 F.4th at 279, 281–282; *High*, 997 F.3d at 190–191. He cites *United States v. Davis*, but that compassionate release case offers him no help. There, changes in the law, "[i]f applied in a new sentencing today" would have lowered the offender's Guidelines range "from a 188–235 months range to 92–115 months range," well below his original sentence of 210 months. 99 F.4th at 661. Yet this Court applied the presumption as usual. *Id.* at 658. The Court ultimately concluded the offender had

18

rebutted the presumption and more explanation was warranted because "a great deal" had changed in the almost ten years between his sentencing and compassionate release motion, including "evidence of rehabilitation" the district court "overlook[ed]," along with a "tremendous shift in the legal landscape" that resulted in a "sentence disparity . . . so stark" and "change in law so substantial" that they rendered his case "not the sort of simple case described in *Chavez-Meza*." *Id.* at 659, 661; *see also id.* at 658, 661 (relying on Guidelines amendments and decisions occurring after the district court's ruling, which it necessarily had been unable to consider). As explained above, Davis has not rebutted the presumption here. And we see no reason to abandon the presumption of due consideration in cases where the retained sentence exceeds the amended Guidelines range in favor of adopting Davis's categorical rule requiring courts to "invariably *acknowledge and address* each of the defendant's arguments on the record" in this one class of cases. *High*, 997 F.3d at 189 (rejecting such a requirement).

## IV.

A sentence reduction motion does not trigger a resentencing or the explanatory requirements that attend such a proceeding. Instead, a district court's acknowledgment that it has considered the parties' arguments will ordinarily suffice. That's the case here, notwithstanding that the district court said more. We discern no abuse of discretion in the court's finding that Davis's original sentence remains necessary. The judgment of the district court is therefore

*AFFIRMED.*

19